IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KRL, a California General
Partnership, ROLAND WOMACK, et
al.,

     Plaintiffs,

     v.

RUSSELL MOORE, et al.,

     Defendants.

CIV-S-99-2437 DFL DAD

MEMORANDUM OF OPINION AND
ORDER

     Plaintiffs are KRL, a California general partnership, and members of the Womack family. Their principal claim is that defendants Russell Moore, David J. Irey, Todd D. Riebe, and Ron Hall violated the Fourth Amendment during a criminal investigation into the removal and alleged concealment of an underground gasoline storage tank. Plaintiffs contend that defendants: (1) obtained overbroad warrants to search for KRL documents without probable cause; (2) intentionally made false statements to obtain the search warrants; and (3) conducted

1

overbroad and unreasonable searches of plaintiffs' property.

In 2001, Riebe, Irey, and Hall brought separate motions for summary judgment on various grounds, including absolute and qualified immunity.  The motions were granted in part and denied in part.  Following defendants' interlocutory appeal of certain of the court's decisions on immunity, the Ninth Circuit affirmed in part, reversed in part, and remanded the case for further proceedings.  Although the Ninth Circuit decision eliminated some of the claims, all defendants remain in the case.  In the interest of judicial efficiency, and because of the potential effect of the Ninth Circuit opinion on the remainder of the case, the court permitted an additional round of dispositive motions by defendants.

I. <u>Facts</u>

A.   <u>Initiation of the Investigation</u>

Plaintiffs Roland Womack, Nadine Womack, and Larry Womack are general partners of KRL.  (Compl. at 3.)  In April 1998, KRL purchased a defunct gas station to convert it into a parking lot for Roland Womack's dental practice.  (Riebe & Hall ("R&H") Mot. at 5.)  Robert Womack -- Larry, Luke, and Roland's father -- supervised the removal of the gas station's underground gasoline storage tank ("UST").[1]  (Pls.' Additional Facts ("PAF") ¶ 2.) Amador County officials eventually became concerned about possible environmental contamination stemming from the tank

---

[1] Robert Womack is not a party to this action.

removal.  (Moore Statement of Undisputed Facts ("SUF") ¶ 12.)
Robert Womack was asked to locate the UST.  (Id.)  His allegedly
conflicting stories caused County officials to refer the case to
the District Attorney's Office for possible criminal prosecution.
(Id. at 13-14, 16.)

     In June 1998, defendant Ron Hall ("Hall"), an investigator
with the District Attorney's Office, began the DA's
investigation.  (PAF ¶ 13.)  Shortly afterwards, the County
appointed defendant David J. Irey ("Irey"), a San Joaquin County
deputy district attorney who specialized in environmental
prosecutions, to assist with the investigation.  (Id. at 15.)  In
September 1998, Hall and Irey found the missing UST and a KRL
check that was used to pay for the UST disposal.  (Moore SUF ¶
22.)  The address on the check was 15864 Ridge Road in Sutter
Creek, California ("Ridge Road"), a KRL property and Robert
Womack's home address.  (Id. at 24-27.)

     In October 1998, defendant California Highway Patrol Officer
Russell Moore ("Moore") joined the UST investigation team.  (Id.
at 30.)  Moore and Hall's investigation led to a series of three
searches of plaintiffs' property in the period from October 30,
1998 to January 21, 1999.  These searches form the basis of this
lawsuit.

     B.   October 30, 1998 Ridge Road Search

     On October 30, 1998, an Amador County Superior Court Judge,
relying upon defendant Moore's affidavit, issued a search warrant
for KRL documents located at Ridge Road.  (Id. at 34-37.)  On

December 1, 1998, a grand jury indicted Robert Womack and others

on twenty-one counts, including illegal transportation of

hazardous waste.  (Id. at 38.)  Plaintiffs in this action were

not named as defendants in any of the counts.

      C.   January 11-13, 1999 Searches

     On January 11, 1999, Moore submitted another affidavit

seeking an expanded search of Ridge Road, as well as search

warrants for KRL accountant Dennis Olmstead's office, and

plaintiffs' telephone and bank records.  (Id. at 40.)  Moore's

affidavit sought to gather evidence for the pending prosecution

as well as to investigate additional charges.  (Moore Mot. Ex.

22.)  Before Moore submitted the affidavit, Irey reviewed it, as

did Todd D. Riebe ("Riebe"), who had been sworn in that very day

as the new Amador County District Attorney.  (PAF ¶ 57.)

     The January 11 warrant for the Ridge Road search authorized

seizure of all:

> [p]artnership reports, paid outs, check books,
> registers, accounting paperwork, any and all
> insurance, memos, correspondence, or other
> documents related to the control and operations of
> the KRL Corporation and/or K.R.L. partnership, and
> articles of personal property tending to establish
> and identify the persons in control of the
> premises, and other containers that may house
> aforementioned records, video tapes and/or
> audiotapes since January 1, 1995 to the present.

(Moore Mot. Ex. 22.)  When Moore and Irey executed this warrant

on January 11, 1999, they discovered additional items that

exceeded the scope of the warrant.  (R&H SUF ¶ 41.)  Therefore,

they interrupted the search and returned to court to seek a

4

broader warrant allowing them to seize documents dating back to 1990.  (Moore Mot. Ex. 22.)  Plaintiffs allege that when the officers executed this broader warrant on January 13, 1999, they seized thousands of documents dating as far back as 1977.  (PAF ¶ 82.)

D.   <u>January 26, 1999 Bosse Ranch Search</u>

On January 21, 1999, Moore submitted another affidavit to obtain a warrant to search for hazardous waste at 17650 Bosse Road in Jackson, California ("Bosse Ranch"), a KRL property where plaintiffs Luke and Renee Womack reside.  (Moore Mot. at 8.) Moore's affidavit relied, in part, on accusations by John Malmquist ("Malmquist") that the Womacks were burying hazardous waste on the property.  (Opp'n to Moore at 12.)  Plaintiffs allege that defendants knew, but did not disclose in the affidavit, that Malmquist was an unreliable witness who was biased against Robert Womack for evicting him from Bosse Ranch. (<u>Id.</u> at 13.)  Plaintiffs also allege that defendants "embellished" the affidavit by using the language "permeated with fraud," and "criminal enterprise," to describe KRL and "career criminal" to describe Robert Womack.   (<u>Id.</u> at 24.)

Moore and other officers executed the search on January 26, 1999.  (Moore SUF ¶ 67.)  Irey was also present for part of the search, but the parties dispute his level of participation. (Irey Mot. at 7.)  Plaintiffs assert that defendants' extensive excavations damaged water mains, electrical lines, driveways, drainage systems, and the foundations of numerous structures.

(Opp'n to Moore at 14.)   Plaintiffs also allege that defendants failed to replace the excavated soil, leaving their property in an unstable condition prone to erosion.   (Id.)   Finally, plaintiffs contend that the executing officers exceeded the express terms of the warrant by searching Luke and Renee Womack's barn and seizing weapons from their mobile home.   (Id.)   The warrant specifically stated that, "NO outbuildings including the doublewide mobile home are to be searched." (Moore Mot. Ex. 28.) (emphasis in original).

### E.   Conclusion of Criminal Investigation

In September 2000, the District Attorney's Office turned over Robert Womack's criminal prosecution to the California Attorney General's Office which eventually dropped all criminal charges.   (Opp'n at 14-15.)

### II. Procedural History

The case has had a lengthy history in this court further complicated by the decision of the Ninth Circuit.  See KRL v. Moore, 384 F.3d 1105 (9th Cir. 2004).

### A.   Plaintiffs' Original Claims

In the original complaint, plaintiffs asserted that defendants violated their Fourth Amendment rights by obtaining and executing warrants for: (1) the October 30, 1998 Ridge Road search;[2] (2) the January 11, 1999 search of Olmstead's office; (3) the January 11, 1999 search of plaintiffs' bank and telephone

---

[2] Against Moore, Irey, and Hall only.

records; (4) the January 11 and January 13, 1999 Ridge Road searches; and (5) the January 26, 1999 Bosse Ranch search. Plaintiffs alleged that the warrants were facially invalid, executed beyond their legal scope, and obtained through judicial deception.

Plaintiffs also claimed that defendants violated their substantive due process rights for: (1) destroying the UST;[3] (2) seizing personal property and excavating at Bosse Ranch; (3) seizing firearms during the January 11 and 13 Ridge Road searches; (4) publicly releasing plaintiffs' confidential records; and (5) authorizing and approving the misconduct of subordinates.[4]

B.   2001 Summary Judgment Motions

Defendants Riebe, Irey, and Hall moved for summary judgment in 2001 seeking absolute or qualified immunity on: (1) the October 30, 1998 search; (2) the facial invalidity and overbroad execution claims for the January 11 and January 13, 1999 Ridge Road warrants; (3) the overbroad execution and judicial deception claims for the January 26, 2001 Bosse Ranch warrant; and (4) all of plaintiffs' substantive due process claims.[5] (1/17/2002 Order

---

[3] Against Irey and Hall only.

[4] Against Riebe only.

[5] Defendants did not move for summary judgment on: (1) the claims regarding the bank, phone, and accountant records; or (2) the facial invalidity claim for the Bosse Ranch search.  Also, plaintiffs stated at oral argument that they were not asserting a judicial deception claim for the January Ridge Road warrants.

at 10.)

The court denied defendants' motions for summary judgment on the following claims: (1) reliance by Riebe, Hall, and Irey on a facially invalid search warrant for the January 11 and 13 searches of Ridge Road; (2) Hall's alleged overbroad execution of the January 13 Ridge Road warrant; (3) Irey's alleged overbroad execution of the Bosse Road warrant; and (4) Riebe, Hall, and Irey's alleged judicial deception relating to the Bosse Ranch warrant.  (Id. at 25.)

C.   Ninth Circuit Appeal

The Ninth Circuit affirmed in part, reversed in part, and remanded for further proceedings.  KRL, 384 F.3d at 1118.  The court held that Riebe, Hall, and Irey were protected by absolute immunity for the January 11 and 13 Ridge Road searches to the extent that they were seeking evidence to support the prosecution of the pending indictment against Womack.  Id. at 1112-13. However, they were not protected by absolute immunity for those searches to the extent that they sought evidence to uncover new crimes before probable cause was established.  Id. at 1114.

The Ninth Circuit also held that Riebe was protected by qualified immunity for his role in approving the January 11 warrant.  Id. at 1116-17.  However, the court found that Hall did not have qualified immunity because: (1) in the court's understanding, Hall was the lead investigator; and (2) Hall unreasonably sought to broaden the warrant's scope back to 1990 in the January 13 search.  Id. at 1117.  Finally, the court held

8

that Riebe and Hall were protected by qualified immunity for the
judicial deception claim.   Id. at 1118.

>    D.   Plaintiffs' Remaining Claims

The following claim are still pending and are the subject of
the defendants' renewed motions for summary judgment:[6] (1) the
Fourth Amendment claims against all defendants for the searches
of plaintiffs' bank and telephone records, and the records of
their accountant Dennis Olmstead; (2) the Fourth Amendment claims
against Hall, Irey, and Moore for the January 11 and January 13,
1999 Ridge Road searches to the extent that the searches sought
evidence of new offenses; (3) the Fourth Amendment claims against
Irey and Moore for the January 26, 2001 Bosse Ranch search; and
(4) the substantive due process claims against Moore relating
primarily to his alleged seizure of personal property.

>    III. Bank, Telephone, and Accountant Records

Summary judgment is granted to all defendants on these
claims because plaintiffs have no reasonable expectation of
privacy in bank and telephone records or in their accountant's
records.

>    A. Accountant's Records

As a general matter, a person does not possess a reasonable
expectation of privacy in information revealed to a third party,
even if the person believes that: the third party's use is

---

[6] In the initial round of summary judgment motions,
defendant Moore neither made nor joined any motion.  He died
after the appeal was filed, and his estate has been substituted
and now moves for summary judgment.

limited,  the information is provided in confidence, and the

confidence will not be betrayed.  United States v. Miller, 425

U.S. 435, 443 (1976).  It is well established that a person has

no expectation of privacy in business and tax records turned over

to an accountant.  Couch v. United States, 409 U.S. 322, 335-36

(1973).

In Couch, a taxpayer hired an independent accountant to whom

she had delivered various business and tax records over several

years.  The accountant maintained an office separate from the

taxpayer's and held the taxpayer's records there.  The taxpayer

claimed a Fourth Amendment violation when a law enforcement agent

subpoenaed the accountant's records in connection with a tax

investigation.  The Court rejected the claim, reasoning that

Couch had little expectation of privacy when she handed records

to her accountant knowing that the accountant must disclose at

least some of the information in those records in her income tax

return.  Id.  The accountant has the discretion to determine what

information to disclose, not the client.  Id.  Moreover, "no

confidential accountant-client privilege exists under federal

law, and no state-created privilege has been recognized in

federal cases."  Id.

The facts here are analogous to those in Couch.  The warrant

sought business and tax records that KRL turned over to its

independent accountant, Dennis Olmstead.  (Moore Ex. 22.)  These

records include partnership business reports and statements,

check books, check registers, accounting paperwork, and state and

federal income tax returns.  Id.  Olmstead maintained those

records in his office.  Id.  Plaintiffs do not negate the

reasonable inference that Olmstead would use these records in his

discretion to file income tax returns and calculate partnership

pay-outs on behalf of KRL.  In these circumstances, plaintiffs do

not have a reasonable expectation of privacy in their

accountant's records and may not assert a claim resting on the

Fourth Amendment concerning these records.

     B. Bank Records

     Similarly, bank depositors have no protectible Fourth

Amendment interest in bank records when they voluntarily convey

financial and other information to the bank and its employees in

the ordinary course of business.  Miller, 425 U.S. at 440, 442-

43.  Bank records are the business records of a bank, not the

private papers of the depositor.  Id.  Congress responded to

Miller by enacting the Right to Financial Privacy Act of 1978

(the "Act"), which provides a right to financial privacy and sets

forth monetary remedies for violation of that right.  United

States v. Frazin, 780 F.2d 1461, 1465 (9th Cir. 1986).  However,

plaintiffs' claim is not based on the statute, and the statute

does not alter the analysis in Miller by creating a legitimate

expectation of privacy in bank records.  United States v.

Kington, 801 F.2d 733, 737 (5th Cir. 1986)(citing United States

v. Payner, 447 U.S. 727, 734 (1980)).

     Plaintiffs attempt to distinguish Miller by pointing out

that, in Miller, only original checks and deposit slips were at

11

issue.  (Opp'n to Moore at 19.)   In contrast, plaintiffs claim

that defendants here "sought every document that the bank might

maintain under [p]laintiffs' names."  Id.  However, plaintiffs

misread Miller.  The subpoenas there required the banks to

produce "all records of accounts, i.e. savings, checking, loan or

otherwise" in defendant's name, not merely checks and deposit

slips.  Miller, 425 U.S. at 437.  Thus, the facts in Miller

parallel the facts here.  Even if the scope of the subpoena in

Miller were narrower, the rationale would still apply.  When

depositors voluntarily convey information to the bank and its

employees, they lose any expectation of privacy in that

information that may be asserted under the Constitution.  Id. at

442-43.

        Plaintiffs alternatively argue that "on the basis of the

Right to Financial Privacy Act alone, plaintiffs had a legitimate

expectation of privacy in their bank records."  (Opp'n to Moore

at 19.)   However, as the cases cited above have held, the Act

provides for specific remedies and does not create broader

constitutional remedies or establish a constitutionally protected

expectation of privacy.  For these reasons, plaintiffs do not

have a Fourth Amendment claim based on the allegedly illegal

search of their bank records.

        C. Telephone Records

        A person has a reasonable expectation of privacy in the

content of phone conversations, but not in the fact that the

conversations took place.  United States v. Fithian, 452 F.2d

505, 506 (9th Cir. 1971).  Here, the warrants sought "[c]ertified copies of subscriber information, billing statements, customer service records, toll records, credit card and bill file records from January 1, 1995 . . . ."  (Moore Mot. Ex. 22.)  These records belong to the phone company.  Therefore, plaintiffs do not enjoy any reasonable expectation of privacy in the information sought in the warrants.

In sum, because plaintiffs do not have a reasonable expectation of privacy in bank and telephone company records, or in their accountant's records, summary judgment is granted to defendants on this claim.

## IV. Plaintiffs' Request for Leave to Amend

Plaintiffs request leave to amend the complaint to "conform to proof" in order to maintain a federal claim based upon the search of their bank, telephone, and accounting records.  Id.  They also seek to add a state law claim for violation of privacy concerning these searches.  Id.

When a plaintiff requests leave to amend after the court issues the scheduling order, the plaintiff must show good cause for the amendment under Fed. R. Civ. P. 16.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294-95 (9th Cir. 2000); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).  The Rule 16(b) standard focuses on the diligence of the party seeking the amendment rather than prejudice to the other party, as under Fed. R. Civ. P. 15.  Id. at 609 ("[T]he focus of the [Rule 16] inquiry is upon the moving party's reasons for seeking

modification.  If that party was not diligent, the inquiry should end.").  The court first issued a scheduling order in July 2000. (Docket #20.)  Therefore, plaintiffs must show good cause to amend at this late date.

Plaintiffs have not met this burden.  Plaintiffs filed their complaint nearly six years ago.  They learned at the hearing on the original motions in 2001 that the court doubted that any Fourth Amendment claim could be made based on the search of these records.  (12/14/2001 Tr. of Summ. J. Mot. at 15-16).  The court then noted that a state claim might be possible.  (Id. at 16.) Plaintiffs had four years to seek leave to add a Right to Financial Privacy Act claim or a state law claim, and yet never sought to do so until now.  Plaintiffs were not diligent. Therefore, their request for leave to amend is denied.

V. <u>Ridge Road Searches</u>

Plaintiffs bring two claims based on the January 11 and January 13, 1999 Ridge Road searches: (1) facial invalidity of the warrant; and (2) overbroad execution.  When the Ninth Circuit reviewed these claims on appeal, it first analyzed whether defendants were protected by absolute immunity.  <u>KRL</u>, 384 F.3d at 1110. In making this determination, the court distinguished between defendants' search for evidence to prosecute the existing indictment against Womack and their search for evidence of new crimes by KRL.  <u>Id.</u> at 1110-15.  The court recognized that "[a] prosecutor is entitled to absolute immunity when he or she performs a function that is 'intimately associated with the

judicial phase of the criminal process.'"  Id. at 1110.
Therefore, the court held that when Riebe, Hall, and Irey "sought
evidence to prosecute the crimes charged in the indictment," they
were protected by absolute immunity.  Id. at 1112-13.  The court
found that the Ridge Road warrants were at least partially within
absolute prosecutorial immunity because the grand jury indictment
established probable cause and Riebe, Hall, and Irey directed at
least some of their actions at the upcoming trial.  Id. at 1112.
In contrast, Riebe, Hall, and Irey's collateral investigation to
uncover new crimes was not protected by absolute immunity.  Id.
at 1114.

Although Hall was not a prosecutor, the court observed that,
"we focus on 'the nature of the function performed, not the
identity of the actor who performed it.'"  Id. at 1113 (citing
Forrester v. White, 484 U.S. 219, 229 (1988)).  The court
therefore concluded that an investigator like Hall was entitled
to the same absolute immunity as a prosecutor when he gathered
evidence to prepare the prosecution case for trial.  KRL, 384
F.3d at 1113.

The Ninth Circuit then examined whether Riebe and Hall had
qualified immunity for their collateral search of evidence to
uncover new crimes involving KRL.[7]  On the facial invalidity
claim, the Ninth Circuit held that Riebe deserved qualified
immunity because his approval of the January 11 warrant was

---

[7] The Ninth Circuit did not examine the issue as to Irey
because Irey did not appeal the court's qualified immunity
decision.

reasonable.  Id. at 1116.  However, it held that Hall's conduct was not covered by qualified immunity because if he were the lead investigator, he should have known that it was unreasonable to broaden the warrant's scope back to 1990.  Id. at 1117.  On the overbroad execution claim, the court held that Hall did not have qualified immunity to the extent that he seized pre-1990 documents.  Id.

As to Moore, Irey, and Hall, the following issues remain: (1) whether Moore is entitled to absolute immunity for any part of the claim concerning the January 11 and 13 searches; (2) whether qualified immunity protects Moore, Irey, and Hall for their reliance on the facially invalid Ridge Road warrant; and (3) whether qualified immunity protects Hall and Moore for the overbroad execution claim.[8]

A.  Absolute Immunity for Moore for the Ridge Road Warrants

Moore is in the same legal posture as Hall.  And, like Hall, Moore also is protected by absolute immunity to the extent he gathered evidence to support the prosecution's case on the existing indictment.  Accordingly, Moore's motion for summary judgment on the basis of absolute prosecutorial immunity is granted to the extent that he sought such evidence.

---

[8] The issue of qualified immunity still remains for Hall because, on the basis of what he contends is additional evidence, he asserts that the Ninth Circuit's decision is not controlling and that: (1) he was not a lead investigator; and (2) he did not seize documents predating 1990.

B.    <u>Qualified Immunity for Facial Invalidity of the Ridge Road Warrants</u>

The qualified immunity test has two parts.  First, the facts, when viewed in a light most favorable to plaintiffs, must demonstrate the violation of a constitutional right.  <u>See</u> <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074 (9th Cir. 2001) (adopting test from <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)).  If they do, the court must then ask whether "the defendant could have nonetheless reasonably but erroneously believed that his or her conduct did not violate the plaintiff's rights."  <u>Id.</u>  In answering this question, the court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u> "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  <u>Lee v. Gregory</u>, 363 F.3d 931, 934 (9th Cir. 2004).

The Ninth Circuit held that the Ridge Road warrants lacked probable cause and therefore the execution of the search violated the Fourth Amendment.  <u>KRL</u>, 384 F.3d at 1116.    The court then evaluated the second part of the <u>Saucier</u> test regarding the reasonableness of defendants' actions.  It rejected Riebe's argument that "a lower standard for reasonableness [was] necessary [for him] because he was pressed into service on his first day in office."  <u>Id.</u> at 1117.  The court held that "[a] state official's conduct is not made more reasonable because the official is less experienced at making the decisions required by

the position." Id.

However, the court still found that Riebe's approval of the first Ridge Road warrant was reasonable. Id. The court noted that the warrant Riebe approved on January 4, 1999 had "a more reasonable temporal limit" because it only dated back to 1995. Id. Moreover, at the time Riebe approved the warrant, the affidavit in support alleged: (1) fraud and tax evasion dating to 1997; (2) hazardous waste violations in 1995 and 1996 at Bosse Road and other locations; and (3) Womack's withdrawal of KRL funds for personal expenses and illegal activities. Id. Given these facts, the court concluded that, when Riebe reviewed it, the warrant "was not 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)).

### 1. Hall

The Ninth Circuit distinguished Hall from Riebe and denied Hall qualified immunity. The court held that, "[a]ssuming he was the lead investigator, Hall had a greater responsibility for ensuring that the warrant was not defective." KRL, 384 F.3d at 1117 (citing Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1028 (9th Cir. 2002)). Moreover, the court held that no reasonable officer could have found probable cause to justify the broader January 13 search in which Hall participated. Id. Hall challenges the Ninth Circuit's decision regarding qualified immunity, arguing that its assumption that he was a "lead investigator" is now negated by overwhelming evidence. (R&H Mot.

18

at 29.)  Instead, Hall claims that he was merely a "line officer" and only "assisted" the lead investigator in the execution of the search.  (Id.)  He contends that he is covered by qualified immunity for the January 11 warrant for the same reasons as Riebe.  (Id.)

Hall's argument is unpersuasive.  Viewing the facts in a light most favorable to plaintiffs, a reasonable jury could infer that Hall was a lead investigator at the January 11 search.  The term "lead investigator" is a legal term of art that refers to the officer "who lead[s] the team that executes a warrant." Ramirez, 298 F.3d at 1027.  In Ramirez, the court found that an officer who "received two reports of illegal weapons, obtained and served the warrant, conducted the pre-search briefing and supervised the search itself" was a lead investigator.  Ramirez, 298 F.3d at 1028.  In contrast, a line officer is of "the rank and file" and follows directions given to him.  Id.

Plaintiffs cite to the following undisputed facts to support their claim that Hall was a leader of the January 11 search team: (1) Moore considered Hall to be a lead investigator from October 1998 to March 1999; (2) Irey also considered Hall to be a lead investigator and Moore's peer; (3) Hall conducted at least 50 interviews to investigate charges against Womack; (4) Hall gave Moore the reports and materials he gathered while investigating Womack; (5) Moore used the information provided by Hall to prepare his affidavits for the January 11 search warrant; (6) Hall read Moore's affidavits and the January 11 warrant before

the search and "found them to be accurate and complete to the best of [his] knowledge;" and (7) Hall participated in the search.  (R&H Mot. at 25.)

Given Hall's integral role in the overall investigation and his review of the affidavits and the warrant, a reasonable jury could find that Hall held a leadership role in the execution of the search.  Alternatively, a reasonable jury could equally conclude that, while Hall lead the overall investigation, he did not lead the January 11 search.  Because Hall's role is a disputed issue of material fact, the court denies summary judgment to Hall on the basis of qualified immunity for the January 11 warrant.

Hall is also not entitled to qualified immunity for the January 13 warrant.  The Ninth Circuit held that no reasonable officer could have believed that there was probable cause to justify a search of documents going back to 1990.  KRL, 384 F.3d at 1117.  Therefore, the court denies summary judgment to Hall for the January 13 warrant.

2. Irey

Irey asserts that he is entitled to qualified immunity for the January 11 warrant for the same reasons Riebe was. Plaintiffs disagree and assert that "[t]he nature and extent of Irey's participation [and knowledge] was significantly different in nature and far more extensive than that of Riebe."  (Opp'n to Irey Mot. at 16.)  Therefore, plaintiffs claim that Irey is not entitled to qualified immunity like Riebe.

Plaintiffs point out that Irey supervised and participated in the Womack investigation before obtaining the January 11 warrant.  (PAF ¶ 16.)  He specialized in environmental prosecution (Id. ¶ 15), and helped write the warrants that the state court judge ultimately approved.  (Id. ¶ 69.)  Like Hall, Irey had an integral part in the investigation, and a reasonable jury could find that he held a leadership role in the decision to obtain a warrant, the contents of the affidavit, the scope of the warrant, and the execution of the January 11 search. Alternatively, as with Hall, a reasonable jury could conclude that, while Irey lead the overall investigation, he did not lead the January 11 search.  Because Irey's role is a disputed issue of material fact, the court denies summary judgment to Irey on the basis of qualified immunity for the January 11 warrant.

Irey is also not entitled to qualified immunity for the January 13 warrant.  As stated above for Hall, the Ninth Circuit held that no reasonable officer could have found probable cause to justify that search.  KRL, 384 F.3d at 1117.  Therefore, the court denies summary judgment to Irey for the January 13 warrant.

### 3. Moore

Moore is not entitled to qualified immunity because the facts demonstrate that he was a lead investigator.  Therefore, he "would have greater responsibility for ensuring that the warrant was not defective."  KRL, 384 F.3d at 1117 (citing Ramirez, 298 F.3d at 1028).

The facts here are similar to those in Ramirez.  Moore (1)

prepared the cover affidavit; (2) presented it with the warrants to Riebe for review and to the state court judge; (3) conducted the pre-search briefing; (4) went to court with Irey to broaden the scope of the warrants; (5) took possession of gathered evidence; and (6) prepared and filed the search warrant return regarding the seized evidence.  (R&H SUF ¶¶ 31, 36, 38-42, 47.)

On these facts, Moore cannot argue that he reasonably relied on the defective January 11 warrant.  In addition, like Hall and Irey, Moore is not protected by qualified immunity for the January 13 warrant in light of the Ninth Circuit decision. Therefore, the court denies Moore's summary judgment motion on both the January 11 and January 13 warrants.

C.   Qualified Immunity for Overbroad Execution of the Ridge
     Road Warrants

     1.  Hall

"Under the Fourth Amendment, the scope of a search is limited to the terms of the warrant and the items described therein."  See United States v. Crozier, 777 F.2d 1376, 1381 (9th Cir. 1985) (citing Bivens v. Six Unknown Named Agents for the Fed. Bureau of Narcotics, 403 U.S. 388, 394 n.7 (1971)).  The Ninth Circuit concluded that "Hall is not entitled to qualified immunity on [p]laintiffs' claim that he seized documents predating 1990."  KRL, 384 F.3d at 1117.  However, on this motion, plaintiffs fail to cite to any evidence that Hall actually seized documents predating 1990.  At best, the evidence cited by plaintiffs demonstrates that defendants removed a tax

return from 1989.  However, that return was dated April 15, 1990,
making its seizure valid under the terms of the warrant.  Thus,
the court grants Hall's motion for summary judgment on
plaintiffs' overbroad execution claim.

2.   <u>Moore</u>

Like Hall, Moore claims that he did not seize documents
predating 1990.  Because plaintiffs cite the same evidence for
Moore as they do for Hall, the court also grants Moore's motion
for summary judgment on the overbroad execution claim.

VI.   <u>Bosse Ranch Search</u>

Plaintiffs bring the following claims based on the Bosse
Ranch search: (1) facial invalidity of the warrant; (2) overbroad
execution of the warrant; and (3) judicial deception.  When the
Ninth Circuit reviewed these claims on appeal, it held that none
of the defendants were protected by absolute immunity for this
warrant because it furthered a "stand alone investigation."  <u>KRL</u>,
384 F.3d at 1115.

The Ninth Circuit did not address qualified immunity on the
facial invalidity claim because the parties did not address the
issue during the original round of dispositive motions in 2001.
Therefore, the facial invalidity claim remains as to all
defendants.

On overbroad execution, this court found that Hall and Riebe
had immunity because they were not present at the search.  The
court found that Irey did not have immunity because the record
was not yet developed.  None of the parties appealed these

findings.  Consequently, Irey and Moore remain in this claim.

On judicial deception, the Ninth Circuit held as to Riebe that the alleged omission in the warrant was not material.  As to Hall, the court held that he had no role in the preparation or execution of the warrant.  The court did not rule on Irey because he did not appeal the order denying him qualified immunity.  Therefore, Irey and Moore remain in this claim.

A.  <u>Facial Invalidity of Bosse Ranch Warrant</u>

The court grants summary judgment to all defendants as to plaintiffs' facial invalidity claim for the Bosse Ranch search warrant because the warrant was sufficiently particular and adequately stated probable cause to search the entire ranch.

Plaintiffs allege that the Bosse Ranch warrant "did not describe, with particularity, the areas to be excavated."  (Compl. at 36.)  To comply with the Fourth Amendment a search warrant must identify the items to be searched and seized with particularity.  <u>See</u>, <u>e.g.</u>, <u>United States v. Spilotro</u>, 800 F.2d 959, 964 (9th Cir. 1986)(search warrant must provide way of distinguish[ing] items used lawfully from those the government had probable cause to search).  The particularity requirement tests whether "the officer with a search warrant can with reasonable effort ascertain and identify the place intended."  <u>Steele v. United States</u>, 267 U.S. 498, 503 (1925); <u>see also</u> <u>United States v. Turner</u>, 770 F.2d 1508, 1510 (9th Cir. 1985).  To the extent that the intended search location was Bosse Ranch, the warrant was sufficiently particular.  The warrant listed the

24

address, the assessor's parcel number, and the ranch's approximate size.  Any reasonable officer could locate the property based on that information.  Therefore, the warrant sufficiently identified the ranch.

However, plaintiffs allege that the description of Bosse Ranch in the warrant was not sufficiently particular because it included the 5-acre parcel that Luke and Renee Womack rented. (Opp'n to Moore Mot. at 27-28.)  Plaintiffs point out that Bob Womack was under investigation, not Luke or Renee.  (Id. at 28.) Therefore, plaintiffs assert that defendants did not have probable cause to search Luke and Renee Womack's rented parcel. (Id.)  Thus, the critical issue is whether the defendants "had a substantial basis for concluding that probable cause existed to search" all 86 acres of the ranch, including the 5 acre parcel that was ultimately excavated in front of Luke and Renee Womack's mobile home.  United States v. Alexander, 761 F.2d 1294, 1301 (9th Cir. 1985).  Summary judgment is warranted if: (1) probable cause actually existed to search the entire ranch; or (2) the entire ranch subject to search was under the common control of the person being investigated, here, Robert Womack.  Id.

In Alexander, officers suspected that defendant was illegally manufacturing drugs.  While surveying defendant's ranch by aircraft, officers saw what they believed to be a cocaine manufacturing facility.  Thereafter, the officers obtained a search warrant to search defendant's entire forty-acre ranch. When they executed the search, they found defendant in a small

trailer about 240 yards from the cocaine processing plant.
Officers also found one of defendant's conspirators in a mobile
home about 20 yards from defendant's trailer.

Alexander argued that the warrant was not sufficiently
particular because it should have only authorized a search of a
smaller portion of the ranch and should not have included his
small trailer.  The court disagreed.  It held that the warrant
should be upheld if (1) probable cause actually existed to search
the entire ranch, or (2) the entire ranch subject to search was
under the common control of the person being investigated.  Id.;
see also United States v. Whitten, 706 F.2d 1000, 1008 (9th Cir.
1983)(holding that "a warrant may authorize a search of an entire
street address while reciting probable cause as to only a portion
of the premises . . . if the defendant was in control of the
entire premises.").  The court ultimately concluded that because
Alexander owned and controlled the entire ranch, the warrant to
search all 40 acres was not overbroad.  Alexander, 761 F.2d at
1301.  The fact that other people occupied the property did not
affect the court's analysis. Id.

Moore claims that he had probable cause to search all of
Bosse Ranch because it was "the place [he] reasonably believed
that he would find evidence of environmental crimes."  (Moore
Mot. at 27.)  Yet, later, he states that "the officers were
working from eyewitness descriptions, including a rough map of
burial locations, which confined the search on a very limited
part of the ranch's 86 acres over a two-day period."  Id. at 28.

If that were true, then he did not have probable cause to search the entire ranch, but only the identified burial locations. However, the 86-acre search was valid because the property was under the common control of Robert Womack.  Plaintiffs argue that KRL, not Robert Womack, controlled the property. (Opp'n to Moore at 27.)   But the facts demonstrate that both KRL and Robert Womack controlled the property and that Robert Womack often acted on behalf of KRL.   He supervised the UST removal and had access to KRL funds and property.   According to eyewitness Baldridge, Robert Womack had enough control to bury materials and large objects on the property, including a 25-foot-long propane tank. (Moore Mot. Ex. 28.)  Because the facts demonstrate that Robert Womack had common control over the property, summary judgment is granted to all defendants for the facial invalidity of the Bosse Ranch warrant.

B.   Overbroad Execution of the Bosse Ranch Warrant

Plaintiffs allege that defendants exceeded the scope of the Bosse Ranch warrant when they: (1) damaged the property when excavating; (2) entered the mobile home and seized plaintiffs' weapons; and (3) entered the barn.  As noted above, only Moore and Irey remain on this claim.

1.  Excavation Damage

"[O]fficers executing search warrants on occasion must damage property in order to perform their duty." Dalia v. United States, 441 U.S. 238, 258 (1979).  However, "destruction of property that is not reasonably necessary to effectively execute

a search warrant may violate the Fourth Amendment."[9]  <u>Tarpley v. Greene</u>, 684 F.2d 1, 9 (D.C. Cir. 1982); <u>see also</u> <u>Liston v. County of Riverside</u>, 120 F.3d 965, 979 (9th Cir. 1997).  A court must look at the particular facts of the case to determine whether destruction of the property is reasonable.  <u>United States v. Becker</u>, 929 F.2d 442, 446 (9th Cir. 1991)(finding that the government acted reasonably when it jackhammered a recently-poured concrete slab to search for drugs); <u>Crowe v. County of San Diego</u>, 359 F.Supp.2d 994, 1026 (S.D. Cal. 2005)(holding that officers acted reasonably when they removed extensive sections of carpet and drywall from murder victim's home, even when it left home inhabitable, because such evidence could potentially yield clues of murder).

In this case, destruction of plaintiffs' property was reasonably necessary to effectively search for the items listed in the Bosse Ranch warrant.  Witness Larry Baldridge told Moore that Robert Womack had buried engines, car parts, 5-gallon containers, 55-gallon drums, tires, wheels, and a 25-foot-long propane tank on the Bosse Ranch property.  (Moore Ex. 28).  Finding these items required using heavy equipment to search the land.

Plaintiffs assert that the law required defendants to repair

---

[9] The Fourth Amendment reasonableness standard for destruction of property appears to be the same for criminal cases and civil cases.  <u>Compare</u> <u>United States v. Becker</u>, 929 F.2d 442 (9th Cir. 1991)(criminal case in which defendants seek to suppress evidence), <u>with</u> <u>Crowe v. County of San Diego</u>, 359 F.Supp.2d 994 (S.D. Cal. 2005)(civil case in which plaintiffs sue government for damages).

the damage that they caused to Bosse Ranch once they concluded

the search.  However, plaintiffs have cited no case, nor could

the court find one, that would accord plaintiffs a  Fourth

Amendment right of repair.[10]  So long as the officer's search was

reasonable, the officer is not liable under the Constitution for

repair costs for the damaged property.  See Liston, 120 F.3d at

979; Crowe, 359 F.Supp.2d at 1026.  As such, both Moore and Irey

are granted summary judgment on the overbroad execution claim to

the extent that it is based on property destruction.

            2.  Seizing Weapons from the Womack's Home

                        a. Irey

        Liability under section 1983 only arises upon a showing of

personal participation in the deprivation of constitutional

rights.  See Taylor v. List, 880 F.2d 1040, 1044-45 (9th Cir.

1989).  Here, plaintiffs present no evidence that Irey was

involved in seizing weapons from the Womack's home.  Therefore,

the court grants summary judgment to Irey on the overbroad

execution claim to the extent that it is based on seizing

weapons.

                        b. Moore

     As discussed earlier, "the scope of a search is limited to

the terms of the warrant and the items described therein."

Crozier, 777 F.2d at 1381.  The Bosse Ranch search warrant only

_____

[10] If there is a remedy under the Constitution, it might be
found under the Fifth Amendment.  However, this is not
plaintiffs' claim.  Moreover, there may be remedies under state
law that would provide for reimbursement.

authorized the search of land for: (1) samples of hazardous waste; (2) receptacles that might hold hazardous waste; (3) documents regarding the "purchase, sale, transfer or disposal of any hazardous material;" and (4) "photograph[s], videotape[s], or tape recording[s] of any pertinent area or subject." (Moore Ex. 28.)  The warrant specifically excluded all outbuildings, including the Womack's doublewide mobile home.  (Id.)  The warrant also did not include weapons.  (Id.)

Nevertheless, Renee Womack alleges that Moore came to her door and asked her if she had any weapons on the premises. (Renee Womack Dep. at 79:2-3.)  After she told Moore that her husband and children shoot trap, Moore allegedly told her, "Well, we have to come in and take [the weapons] from you . . . .  You need to show me where they are."  (Id. at 79:4-9.)  Renee then let Moore and other officers inside.  (PAF ¶ 108.)  Renee asserts that she "did not at any time voluntarily consent to this entry into her home."  (Id. ¶ 109.)  Renee testified that "the officers remain[ed] in the residence only long enough to find the guns and take the guns." (Renee Womack Dep. at 80:23-24.)  She also testified that there was not a general search of the residence. (Id. at 80:21-22.)

Moore claims that he is entitled to qualified immunity for the weapons seizure.  He argues that the first part of the Saucier test is not met because "[t]he Bosse Ranch Search was performed within the scope of the warrant" and was constitutional.  (Moore Mot. at 28.)  Moore asserts that the

1  officers were entitled to seize the weapons to ensure officer

2  safety.  (Id. (citing Muehler v. Mena, 125 S.Ct. 1465 (2005)).)

3       The Fourth Amendment allows police officers who enter a

4  house with an arrest warrant to conduct a protective sweep of the

5  house if the officers have "a reasonable belief based on specific

6  and articulable facts that the area to be swept harbors an

7  individual posing a danger to those on the arrest scene."

8  Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093 (1990).  Officers

9  may also conduct a "protective sweep" in conjunction with a

10 search warrant.  United States v. Daoust, 916 F.2d 757, 759 (1st

11 Cir. 1990).  In such cases, there must be "an objective basis for

12 a reasonable suspicion of risk to the safety of the officers."

13 Id.  The Daoust court found that officers had "individualized

14 suspicion" to justify a 30-second protective sweep of a suspect's

15 house after they arrived to execute a warrant for seizure of a

16 handgun officers had observed through the window.  Id.  The

17 officers reasonably feared violence because the suspect: (1)

18 could have been at home sleeping; (2) had prior criminal history

19 of violent behavior; (3) kept his gun in an unusual place in the

20 kitchen; and (4) lived in an isolated area, far from the nearest

21 neighbor.  Id.

22      Moore takes this case law a step further.  In the absence of

23 any particularized reason to expect an attack from Renee Womack

24 or anyone else present in the house, and despite the express

25 exclusion of the house from the warrant, Moore nonetheless argues

26 that he could insist on entry into the home – where the

expectation of privacy is at its highest – to search for, and then seize, weapons simply because he had the right to search the ranch.  This was overreaching and was neither supported by the terms of the warrant – indeed, all structures were specifically excluded – or by the conditions as the officers found them. Therefore, Moore's entry into the home and seizure of weapons violated the Fourth Amendment.

Moore is also not entitled to qualified immunity under the second part of the <u>Saucier</u> test.  A reasonable officer would have understood that searching for and seizing the weapons was unlawful because: (1) weapons were not included in the warrant; (2) the home was expressly excluded from the warrant;  and (3) nothing had happened to suggest that Luke or Renee posed a threat.  Accordingly, the court denies Moore summary judgment on the overbroad execution claim for entering the mobile home and seizing weapons.

### 3. <u>Entering the Barn</u>

#### a.  <u>Irey</u>

Again, plaintiffs present no evidence that Irey was involved in entering the barn.  Therefore, the court grants summary judgment to Irey on the overbroad execution claim to the extent it is based on the barn entry.

#### b. <u>Moore</u>

Renee Womack testified that she saw Moore go inside the barn twice without her permission.  (Opp'n to Moore at 28-29.)  Moore asserts that he merely entered the barn to check for any live

underground wiring that might endanger the searchers while they
excavated.  (Moore Mot. at 29.)  Unlike the protective sweep of
the mobile home, this sweep of the barn was reasonable.
Defendants had "an objective basis for a reasonable suspicion of
risk to the safety of the officers." Daoust, 916 F.2d at 759.
The search authorized by the search warrant required digging that
could interfere with electrical wires.  Defendants could have
chosen not to check the barn for live wires, but to do so would
place the officers at risk and could have affected the Womacks'
supply of electricity to their home.  Moore's search for live
wires was directed at mitigating any potential damage or danger
to the officers.  Plaintiffs cannot argue that defendants did not
take the proper precautions to prevent damage while
simultaneously arguing that defendants should not have entered
the barn to prevent damage.

Even if Moore's actions were unconstitutional, he would be
entitled to qualified immunity under the second part of the
Saucier test.  A reasonable officer could conclude that entering
the barn solely to check for live wires to mitigate damage was
lawful.  Little case law addresses this particular issue, and had
Moore gone back to the judge to extend the warrant, the judge
likely would have granted the request.  Defendants present no
evidence that Moore's stated reasons for entering the barn were
pretextual.  Therefore, the court grants summary judgment to
Moore on the overbroad execution claim to the extent he entered
the barn to check on possible hazards from live wires.

1      C. <u>Judicial Deception</u>

2          "To support a § 1983 claim of judicial deception, a

3   plaintiff must show that the defendant deliberately or recklessly

4   made false statements or omissions that were material to the

5   finding of probable cause." Galbraith v. County of Santa Clara,

6   307 F.3d 1119, 1126 (9th Cir. 2002).  The court determines the

7   materiality of alleged false statements or omissions. Butler v.

8   Elle, 281 F.3d 1014, 1024 (9th Cir. 2002).

9          Plaintiffs contend that defendants "embellished" the

10  affidavit by using the language "permeated with fraud," "lifetime

11  of crime," and "criminal enterprise," and that Moore

12  misrepresented the nature of Robert Womack's "rap" sheet by

13  calling him a "career criminal."  (Opp'n to Moore at 24.)

14  However, none of these terms were material to the finding of

15  probable cause.  The term "permeated with fraud" only appears on

16  the first page of the 24-page affidavit.  In context, it is used

17  as an abstract term of art that summarizes the material facts

18  found on the other 23 pages.  A judge's finding of probable cause

19  would not turn on this one characterization.

20         Also, the terms "lifetime of crime," "criminal enterprise,"

21  and "career criminal" do not appear in the affidavit.  Instead,

22  on page 1, as an introduction to the rest of the affidavit, Moore

23  states that Womack "has been committing crimes off and on for at

24  least 40 years."  On page 4, Moore mentions Womack's rap sheet

25  and states,

26         I am aware from a FBI rap sheet that Robert R. Womack

                                  34

was first charged with Conspiracy in 1961, to date I am
not sure whether he was convicted of a felony or a
misdemeanor for that offense, but my investigation
continues.  The second time Robert R. Womack was
charged with Conspiracy was in 1975.  It appears from
the rap sheet that he pled to a misdemeanor in that
case.

(Moore Mot. Ex. 22.)  Moore does not misrepresent Womack's

criminal past.  Plaintiffs admit that "Womack's record revealed

approximately six misdemeanors dating from 1975 and earlier."

(PAF ¶ 125.)  On pages 4 and 5 of the affidavit, Moore lists

several other instances of Womack's criminal activity.  (Moore

Mot. Ex. 22.)  Overall, plaintiffs fail to show any false

statements or omissions that were material to the finding of

probable cause.  Therefore, the court grants Irey and Moore

summary judgment on the judicial deception claim for the Bosse

Ranch warrant.

VII. <u>Substantive Due Process Claims Against Moore</u>

Claims seven, eight, and nine of plaintiffs' complaint

allege substantive due process violations.  The seventh claim

addresses the excavation and seizure of personal property at

Bosse Ranch.  The eighth claim addresses the seizure and

detention of firearms at Ridge Road.  The ninth claim addresses

the release of plaintiffs' confidential records to the public.

In the original round of dispositive motions, the court

granted summary judgment on claims seven and eight to Irey, Hall,

and Riebe on the basis that substantive due process does not

apply.  "Injuries arising from allegedly illegal searches and

seizures are addressed by the Fourth Amendment, a more specific

Constitutional provision." (1/17/2002 Order at 10-11.)  On the ninth claim, the court found that plaintiffs failed to show any invasion of privacy.  "Although Riebe issued a press release urging the public to examine the grand jury exhibits which included copies of plaintiffs' documents and plaintiffs allege that Irey subsequently took possession of the exhibits, there are no facts indicating that any members of the public ever read the exhibits."  (Id. at 11-12).

Plaintiffs offer no reason why the court's earlier conclusions do not also apply to Moore.  Therefore, the court grants Moore summary judgment on plaintiffs' substantive due process claims.

VIII.

In conclusion, summary judgment is GRANTED to all defendants as to plaintiffs' Fourth Amendment claims for the search of their accountant, bank, and telephone records.  Plaintiffs' request for leave to amend their complaint in light of this decision is DENIED.

On the Ridge Road searches, summary judgment is: (1) GRANTED to Moore for the facial invalidity claim to the extent that his actions were prosecutorial; and (2) GRANTED to Hall and Moore on the overbroad execution claim.

For the Bosse Ranch search, summary judgment is: (1) GRANTED to all defendants on the facial invalidity claim; (2) GRANTED to Irey on the overbroad execution claim; and (3) GRANTED to all defendants on the judicial deception claim.

1   Finally, summary judgment is GRANTED to Moore on the

2   substantive due process claims.

3   Thus, the following claims remain: (1) facial invalidity of

4   the Ridge Road warrants against Hall, Moore and Irey; and (2)

5   overbroad execution of the Bosse Ranch search against Moore to

6   the extent he seized weapons from the Womacks' home.

7   IT IS SO ORDERED.

8

9   Dated: March 2, 2006

10

11

12

13   _____

14   DAVID F. LEVI
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26